# Exhibit A

```
          COURT DOCKET - MADISON   COUNTY CIRCUIT CLERK          PAGE:    1
Case: 2018L 000746        BLAND BRIAN vs USF HOLLAND INC         DATE: 2018-07-19
Type: DISCRIMINATION      Judge: RUTH DENNIS        Jury Trial:  NJ   TIME: 09.55.35
From: 00/00/0000 To: 99/99/9999 All Case Entries    First Date First View
Filed: 6/06/2018  Status: Open Case on 6/06/2018
            CASE PARTICIPANTS NAMES                ATTORNEYS
            -----------------------                ---------
PLA         BLAND BRIAN                            LESKERA JOHN H (JAY)
DEF         USF HOLLAND INC
DEF         GULA CHRISTOPHER

DATE
----------
06/06/2018 Personal Injury Fee $227.00 Amt $50000.01 Plaintiff BLAND BRIAN
           Defendant USF HOLLAND INC
           COMPLAINT
06/06/2018 CLEARED FOR PUBLIC
06/07/2018 JA Assignment Order HONORABLE JUDGE DENNIS RUTH
           Document JAORDER.DOC Was Printed
06/07/2018 SUMMONS ISSUED ON DFTS & MAILED TO ATTY FOR SERVICE ISSUED
           Defendant USF HOLLAND INC Defendant GULA CHRISTOPHER
           Document SU30DAY.DOC Was Printed
06/11/2018 APPEARANCE - FEES PREVIOUSLY PAID FILED BY Plaintiff BLAND BRIAN
           ENTRY OF APPEARANCE
06/11/2018 AFFIDAVIT FILED BY Plaintiff BLAND BRIAN
           AFFIDAVIT OF DAMAGES
06/20/2018 SUMMONS RETURNED NOT SERVED BY MCSD ON JUNE 20, 2018
           NOT AN EMPLOYEE SINCE MAY 2018 (CHRISTOPHER GULA)
06/21/2018 Copies Fee $2.50 Plaintiff BLAND BRIAN
06/28/2018 Copies Fee $2.00 Plaintiff BLAND BRIAN
07/17/2018 Copies Fee $2.00 Plaintiff BLAND BRIAN
07/17/2018 PROOF OF SERVICE/CERTIFICATE OF SERVICE PROOF OF SERVICE FILED BY
           Plaintiff BLAND BRIAN
           ON USF HOLLAND SERVED 6-19-18 BY MCSD
```

***EFILED***
Case Number 2018L 000746
Transaction ID: 62108730
Date: Jun 06 2018 05:06PM
Mark Von Nida
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

BRIAN BLAND,                    )
                               )
        Plaintiff,              )
                               )
v.                             )          Case No.:  18-L-
                               )
USF HOLLAND, INC. and          )
CHRISTOPHER GULA,              )
                               )
        Defendant.             )

## COMPLAINT

### Count I (Hostile Work Environment-Illinois Human Rights Act, 775 ILCS 5)

COMES NOW Plaintiff, Brian Bland, by and through his attorney, John H. Leskera, and for Count I of his Complaint directed against USF Holland, Inc., states to the Court as follows:

1.      USF Holland, Inc. is doing business in Madison County within a facility located at 24 Gateway Commerce Center Drive East, Edwardsville, IL 62025.  At all times Defendant, USF Holland, Inc., was subject to the provisions of the Illinois Human Rights Act (775 ILCS 5) which prohibits discrimination in employment on the basis of race.

2.      Plaintiff, an African American male, became employed with Defendant on or about October 13, 2005 as a truck driver at Defendant's Edwardsville facility. As such, Plaintiff was entitled to the protections against racial discrimination afforded under the Illinois Human Rights Act (775 ILCS 5).

3.      At all times a term and condition of the Plaintiff's job was set forth in Defendant's "Policy on Harassment" reissued May 25, 2012. Defendant committed itself

Case No.: 18-L-

to "providing a work environment where people are treated with respect" and prohibited harassment on the basis of race. The Policy further provided that: "Any employee that harasses a coworker will be subject to disciplinary action up to and including discharge."

4.      The Policy defined harassment as "any conduct or language that makes someone feel uncomfortable because of their race." The Policy provided examples of harassment which included the following:  Use of ethnic slurs, making racial jokes, making offensive or derogatory comments, displaying offensive items such as a hangman's noose, and displaying offensive material.

5.      The Policy promised that if a complaint were made "the Company will promptly and thoroughly investigate" while keeping complaints made "confidential." Finally, the Policy provided that if harassment occurred "appropriate corrective action" will be taken.

6.      During the course of Plaintiff's employment with Defendant, the Defendant ignored its Policy on Harassment and failed to enforce its terms even though the Policy was a term and condition of the Plaintiff's employment.  Offensive racial jokes, demeaning to African Americans, were told on a regular basis in the presence of supervisors.  Racial slurs, including the use of the N-word, were routinely uttered without consequence from management.  Racially offensive posters and signs, including KKK insignia, were displayed at the facility and remained posted for a significant period of time. The Defendant's tolerance of this behavior, coupled with its refusal to enforce the Policy on Harassment, created a culture of racism.

7.      On or about April 12, 2017, while Plaintiff was making delivery at Jahabow Industries, Inc. in Owensville, MO, a Jahabow employee climbed onto Plaintiff's truck

and facetiously asked, "Do you have the load of watermelons?" When Plaintiff explained he was not delivering watermelons, the employee reported back to a large group of other employees who laughed. Another Jahabow employee offensively asked, "Does he have the bananas?" This abhorrent question produced further laughter from the Jahabow employees. Plaintiff explained he did not have the bananas either. Those questions were asked purely for the purpose of harassing Plaintiff on the basis of his race.

8.     Plaintiff had confidential conversations with Keith Mitchell, Holland's Terminal Dispatcher, and Christopher Gula, Holland's Terminal Manager, regarding the events that occurred at Jahabow Industries, Inc. on April 12, 2017. Plaintiff had reasonable expectation that the events that occurred at Jahabow Industries, Inc. on April 12, 2017 would be kept confidential.

9.     April 26, 2017, when Plaintiff reported to work, he was traumatized to find a banana hanging on a rope from the handle of a pallet jack with which the Plaintiff was assigned to work. This racist symbol was used to represent a hangman's noose. Plaintiff's co-workers who worked in the immediate area, who were all white, knew the noose was hung from the pallet jack but did nothing to remove it. In fact, co-worker Jimmy McCutchen asked the Plaintiff as he approached his work area, "Have you seen what is hanging from your pallet jack?" This incident caused Plaintiff to suffer from severe emotional distress and affected his ability to work.

10.     Neither Keith Mitchell nor Christopher Gula kept the incident at Jahabow Industries "confidential." The banana hanging from the noose on Plaintiff's pallet jack was a direct result of the Jahabow Industries, Inc.'s incident which was disclosed by

Mitchell and Gula. Defendant treated the incident at Jahabow as something humorous to be shared with all employees rather than keeping the matter confidential as set forth in the Policy on Harassment.

11.    Defendant further violated the Policy on Harassment by failing to "thoroughly investigate" the April 26, 2017 incident regarding the noose on the Plaintiff's pallet jack. Defendant would only discipline an employee who admitted to placing the banana on the pallet jack. When no one admitted to the offense, the Defendant issued no discipline. Defendant's investigation was unmotivated, sloppy, and designed to go through the motions rather than to elicit the facts surrounding this racially offensive act. As such, the "investigation" violated the Policy on Harassment and altered the terms and conditions of Plaintiff's employment to work in an employment setting free from racial harassment.

12.    The events of April 26, 2017 constitute unwelcome harassment based on Plaintiff's race. The incident of April 26, 2017, together with the previous racial jokes, racial slurs, and racially offensive postings, constitute harassment so severe or pervasive as to alter the conditions of the work environment by creating a hostile situation in violation of Defendant's Policy on Harassment. The basis for the employer's liability is the employer's failure to enforce the Policy on Harassment which led to a culture of racism and empowered Defendant's employees to engage in the April 26, 2017 act without fear of punishment.

13.    By virtue of the hostile work environment which the Defendant permitted to exist, the Plaintiff has suffered damages including wage loss, emotional distress, pain and suffering, and humiliation.

WHEREFORE, Plaintiff prays the Court award damages in excess of $50,000, attorney's fees, and cost of suit.

### Count II (Racial Discrimination-Illinois Human Rights Act, 775 ILCS 5)

COMES NOW Plaintiff, Brian Bland, by and through his attorney, John H. Leskera, and for Count II of his Complaint directed against USF Holland, Inc., states to the Court as follows:

1.    USF Holland, Inc. is doing business in Madison County within a facility located at 24 Gateway Commerce Center Drive East, Edwardsville, IL 62025. At all times Defendant, USF Holland, Inc., was subject to the provisions of the Illinois Human Rights Act (775 ILCS 5) which prohibits discrimination in employment on the basis of race.

2.    Plaintiff, an African American male, became employed with Defendant on or about October 13, 2005 as a truck driver at Defendant's Edwardsville facility. As such, Plaintiff was entitled to the protections against racial discrimination afforded under the Illinois Human Rights Act (775 ILCS 5).

3.    At all times a term and condition of the Plaintiff's job was set forth in Defendant's "Policy on Harassment" reissued May 25, 2012. Defendant committed itself to "providing a work environment where people are treated with respect" and prohibited harassment on the basis of race. The Policy further provided that: "Any employee that harasses a coworker will be subject to disciplinary action up to and including discharge."

4.    The Policy defined harassment as "any conduct or language that makes someone feel uncomfortable because of their race." The Policy provided examples of

harassment which included the following: Use of ethnic slurs, making racial jokes, making offensive or derogatory comments, displaying offensive items such as a hangman's noose, and displaying offensive material.

5. The Policy promised that if a complaint were made "the Company will promptly and thoroughly investigate" while keeping complaints made "confidential." Finally, the Policy provided that if harassment occurred "appropriate corrective action" will be taken.

6. During the course of Plaintiff's employment with Defendant, the Defendant ignored its Policy on Harassment and failed to enforce its terms even though the Policy was a term and condition of the Plaintiff's employment. Offensive racial jokes, demeaning to African Americans, were told on a regular basis in the presence of supervisors. Racial slurs, including the use of the N-word, were routinely uttered without consequence from management. Racially offensive posters and signs, including KKK insignia, were displayed at the facility and remained posted for a significant period of time. The Defendant's tolerance of this behavior, coupled with its refusal to enforce the Policy on Harassment, created a culture of racism.

7. On or about April 12, 2017, while Plaintiff was making delivery at Jahabow Industries, Inc. in Owensville, MO, a Jahabow employee climbed onto Plaintiff's truck and facetiously asked, "Do you have the load of watermelons?" When Plaintiff explained he was not delivering watermelons, the employee reported back to a large group of other employees who laughed. Another Jahabow employee offensively asked, "Does he have the bananas?" This abhorrent question produced further laughter from the Jahabow employees. Plaintiff explained he did not have the bananas either. Those

questions were asked purely for the purpose of harassing Plaintiff on the basis of his race.

8.      Plaintiff had confidential conversations with Keith Mitchell, Holland's Terminal Dispatcher, and Christopher Gula, Holland's Terminal Manager, regarding the events that occurred at Jahabow Industries, Inc. on April 12, 2017. Plaintiff      had reasonable expectation that the events that occurred at Jahabow Industries, Inc. on April 12, 2017 would be kept confidential.

9.      April 26, 2017, when Plaintiff reported to work, he was traumatized to find a banana hanging on a rope from the handle of a pallet jack with which the Plaintiff was assigned to work.  This racist symbol was used to represent a hangman's noose. Plaintiff's co-workers who worked in the immediate area, who were all white, knew the noose was hung from the pallet jack but did nothing to remove it.  In fact, co-worker Jimmy McCutchen asked the Plaintiff as he approached his work area, "Have you seen what is hanging from your pallet jack?"  This incident caused Plaintiff to suffer from severe emotional distress and affected his ability to work.

10.     Neither Keith Mitchell nor Christopher Gula kept the incident at Jahabow Industries "confidential."  The banana hanging from the noose on Plaintiff's pallet jack was a direct result of the Jahabow Industries, Inc.'s incident which was disclosed by Mitchell and Gula.  Defendant treated the incident at Jahabow as something humorous to be shared with all employees rather than keeping the matter confidential as set forth in the Policy on Harassment.

11.     Defendant further violated the Policy on Harassment by failing to "thoroughly investigate" the April 26, 2017 incident regarding the noose on the Plaintiff's

pallet jack. Defendant would only discipline an employee who admitted to placing the banana on the pallet jack. When no one admitted to the offense, the Defendant issued no discipline. Defendant's investigation was unmotivated, sloppy, and designed to go through the motions rather than to illicit the facts surrounding this racially offensive act. As such, the "investigation" violated the Policy on Harassment and altered the terms and conditions of Plaintiff's employment to work in an employment setting free from racial harassment.

12.     As an African American, Plaintiff is a member of a protected class. At all times, Plaintiff was meeting his employer's legitimate expectations. Plaintiff suffered an adverse employment action by virtue of Defendant's failure to follow Policy on Harassment and creating a culture of racism, failing to "thoroughly investigate" the April 26, 2017 incident, failing to determine who was responsible for hanging the noose from Plaintiff's pallet jacket and punishing persons responsible, and failing to keep the incident of April 12, 2017 confidential all of which served to alter the terms and conditions of Plaintiff's employment as prescribed by the Policy on Harassment.

13.     As a result of Defendant's racial discrimination, Plaintiff has suffered damages including wage loss, emotional distress, pain and suffering, and humiliation.

WHEREFORE, Plaintiff prays the Court award damages in excess of $50,000, attorney's fees, and cost of suit.

**Count III (Intentional Infliction of Emotional Distress)**

COMES NOW Plaintiff, Brian Bland, by and through his attorney, John H. Leskera, and for Count III of his Complaint directed against USF Holland, Inc., states to the Court as follows:

1.     USF Holland, Inc. is doing business in Madison County within a facility located at 24 Gateway Commerce Center Drive East, Edwardsville, IL 62025. At all times Defendant, USF Holland, Inc., was subject to the provisions of the Illinois Human Rights Act (775 ILCS 5) which prohibits discrimination in employment on the basis of race.

2.     Plaintiff, an African American male, became employed with Defendant on or about October 13, 2005 as a truck driver at Defendant's Edwardsville facility. As such, Plaintiff was entitled to the protections against racial discrimination afforded under the Illinois Human Rights Act (775 ILCS 5).

3.     At all times a term and condition of the Plaintiff's job was set forth in Defendant's "Policy on Harassment" reissued May 25, 2012. Defendant committed itself to "providing a work environment where people are treated with respect" and prohibited harassment on the basis of race. The Policy further provided that: "Any employee that harasses a coworker will be subject to disciplinary action up to and including discharge."

4.     The Policy defined harassment as "any conduct or language that makes someone feel uncomfortable because of their race." The Policy provided examples of harassment which included the following:  Use of ethnic slurs, making racial jokes, making offensive or derogatory comments, displaying offensive items such as a hangman's noose, and displaying offensive material.

5.    The Policy promised that if a complaint were made "the Company will promptly and thoroughly investigate" while keeping complaints made "confidential." Finally, the Policy provided that if harassment occurred "appropriate corrective action" will be taken.

6.    During the course of Plaintiff's employment with Defendant, the Defendant ignored its Policy on Harassment and failed to enforce its terms even though the Policy was a term and condition of the Plaintiff's employment.   Offensive racial jokes, demeaning to African Americans, were told on a regular basis in the presence of supervisors.  Racial slurs, including the use of the N-word, were routinely uttered without consequence from management.   Racially offensive posters and signs, including KKK insignia, were displayed at the facility and remained posted for a significant period of time.  The Defendant's tolerance of this behavior, coupled with its refusal to enforce the Policy on Harassment, created a culture of racism.

7.    On or about April 12, 2017, while Plaintiff was making delivery at Jahabow Industries, Inc. in Owensville, MO, a Jahabow employee climbed onto Plaintiff's truck and facetiously asked, "Do you have the load of watermelons?" When Plaintiff explained he was not delivering watermelons, the employee reported back to a large group of other employees who laughed.  Another Jahabow employee offensively asked, "Does he have the bananas?" This abhorrent question produced further laughter from the Jahabow employees.  Plaintiff explained he did not have the bananas either.  Those questions were asked purely for the purpose of harassing Plaintiff on the basis of his race.

8.      Plaintiff had confidential conversations with Keith Mitchell, Holland's Terminal Dispatcher, and Christopher Gula, Holland's Terminal Manager, regarding the events that occurred at Jahabow Industries, Inc. on April 12, 2017. Plaintiff        had reasonable expectation that the events that occurred at Jahabow Industries, Inc. on April 12, 2017 would be kept confidential.

9.      April 26, 2017, when Plaintiff reported to work, he was traumatized to find a banana hanging on a rope from the handle of a pallet jack with which the Plaintiff was assigned to work.  This racist symbol was used to represent a hangman's noose. Plaintiff's co-workers who worked in the immediate area, who were all white, knew the noose was hung from the pallet jack but did nothing to remove it.  In fact, co-worker Jimmy McCutchen asked the Plaintiff as he approached his work area, "Have you seen what is hanging from your pallet jack?"  This incident caused Plaintiff to suffer from severe emotional distress and affected his ability to work.

10.      Neither Keith Mitchell nor Christopher Gula kept the incident at Jahabow industries "confidential."  The banana hanging from the noose on Plaintiff's pallet jack was a direct result of the Jahabow Industries, Inc.'s incident which was disclosed by Mitchell and Gula.  Defendant treated the incident at Jahabow as something humorous to be shared with all employees rather than keeping the matter confidential as set forth in the Policy on Harassment.

11.      Defendant further violated the Policy on Harassment by failing to "thoroughly investigate" the April 26, 2017 incident regarding the noose on the Plaintiff's pallet jack.  Defendant would only discipline an employee who admitted to placing the banana on the pallet jack.  When no one admitted to the offense, the Defendant issued

no discipline. Defendant's investigation was unmotivated, sloppy, and designed to go through the motions rather than to elicit the facts surrounding this racially offensive act. As such, the "investigation" violated the Policy on Harassment and altered the terms and conditions of Plaintiff's employment to work in an employment setting free from racial harassment.

12.     The Defendant's conduct constitutes extreme and outrageous behavior towards the Plaintiff. The Defendant intended or recklessly disregarded the probability that the conduct would cause the Plaintiff to suffer emotional distress. The Plaintiff endured severe or extreme emotional distress and the Defendant's conduct actually and proximately caused Plaintiff's distress.

13.     As a result of Defendant's intentional infliction of emotional distress, Plaintiff has suffered damages including wage loss, emotional distress, pain and suffering, and humiliation.

WHEREFORE, Plaintiff prays the Court award damages in excess of $50,000, attorney's fees, and cost of suit.

## Count IV (Negligent Infliction of Emotional Distress)

COMES NOW Plaintiff, Brian Bland, by and through his attorney, John H. Leskera, and for Count III of his Complaint directed against USF Holland, Inc., states to the Court as follows:

1.     USF Holland, Inc. is doing business in Madison County within a facility located at 24 Gateway Commerce Center Drive East, Edwardsville, IL 62025. At all times Defendant, USF Holland, Inc., was subject to the provisions of the Illinois Human

Rights Act (775 ILCS 5) which prohibits discrimination in employment on the basis of race.

2.    Plaintiff, an African American male, became employed with Defendant on or about October 13, 2005 as a truck driver at Defendant's Edwardsville facility. As such, Plaintiff was entitled to the protections against racial discrimination afforded under the Illinois Human Rights Act (775 ILCS 5).

3.    At all times a term and condition of the Plaintiff's job was set forth in Defendant's "Policy on Harassment" reissued May 25, 2012. Defendant committed itself to "providing a work environment where people are treated with respect" and prohibited harassment on the basis of race. The Policy further provided that: "Any employee that harasses a coworker will be subject to disciplinary action up to and including discharge."

4.    The Policy defined harassment as "any conduct or language that makes someone feel uncomfortable because of their race." The Policy provided examples of harassment which included the following:   Use of ethnic slurs, making racial jokes, making offensive or derogatory comments, displaying offensive items such as a hangman's noose, and displaying offensive material.

5.    The Policy promised that if a complaint were made "the Company will promptly and thoroughly investigate" while keeping complaints made "confidential." Finally, the Policy provided that if harassment occurred "appropriate corrective action" will be taken.

6.    During the course of Plaintiff's employment with Defendant, the Defendant ignored its Policy on Harassment and failed to enforce its terms even though the Policy was a term and condition of the Plaintiff's employment.   Offensive racial jokes,

demeaning to African Americans, were told on a regular basis in the presence of supervisors.   Racial slurs, including the use of the N-word, were routinely uttered without consequence from management.   Racially offensive posters and signs, including KKK insignia, were displayed at the facility and remained posted for a significant period of time.  The Defendant's tolerance of this behavior, coupled with its refusal to enforce the Policy on Harassment, created a culture of racism.

7.     On or about April 12, 2017, while Plaintiff was making delivery at Jahabow Industries, Inc. in Owensville, MO, a Jahabow employee climbed onto Plaintiff's truck and facetiously asked, "Do you have the load of watermelons?" When Plaintiff explained he was not delivering watermelons, the employee reported back to a large group of other employees who laughed.  Another Jahabow employee offensively asked, "Does he have the bananas?" This abhorrent question produced further laughter from the Jahabow employees.  Plaintiff explained he did not have the bananas either.  Those questions were asked purely for the purpose of harassing Plaintiff on the basis of his race.

8.     Plaintiff had confidential conversations with Keith Mitchell, Holland's Terminal Dispatcher, and Christopher Gula, Holland's Terminal Manager, regarding the events that occurred at Jahabow Industries, Inc. on April 12, 2017.  Plaintiff had reasonable expectation that the events that occurred at Jahabow Industries, Inc. on April 12, 2017 would be kept confidential.

9.     April 26, 2017, when Plaintiff reported to work, he was traumatized to find a banana hanging on a rope from the handle of a pallet jack with which the Plaintiff was assigned to work.  This racist symbol was used to represent a hangman's noose.

Plaintiff's co-workers who worked in the immediate area, who were all white, knew the noose was hung from the pallet jack but did nothing to remove it. In fact, co-worker Jimmy McCutchen asked the Plaintiff as he approached his work area, "Have you seen what is hanging from your pallet jack?" This incident caused Plaintiff to suffer from severe emotional distress and affected his ability to work.

10.   Neither Keith Mitchell nor Christopher Gula kept the incident at Jahabow industries "confidential." The banana hanging from the noose on Plaintiff's pallet jack was a direct result of the Jahabow Industries, Inc.'s incident which was disclosed by Mitchell and Gula. Defendant treated the incident at Jahabow as something humorous to be shared with all employees rather than keeping the matter confidential as set forth in the Policy on Harassment.

11.   Defendant further violated the Policy on Harassment by failing to "thoroughly investigate" the April 26, 2017 incident regarding the noose on the Plaintiff's pallet jack. Defendant would only discipline an employee who admitted to placing the banana on the pallet jack. When no one admitted to the offense, the Defendant issued no discipline. Defendant's investigation was unmotivated, sloppy, and designed to go through the motions rather than to elicit the facts surrounding this racially offensive act. As such, the "investigation" violated the Policy on Harassment and altered the terms and conditions of Plaintiff's employment to work in an employment setting free from racial harassment.

12.   The Defendant's conduct constitutes extreme and outrageous behavior towards the Plaintiff. The Defendant intended or recklessly disregarded the probability that the conduct would cause the Plaintiff to suffer emotional distress. The Plaintiff

endured severe or extreme emotional distress and the Defendant's conduct actually and proximately caused Plaintiff's distress.

13.     The Defendant owed a duty to the Plaintiff based on the Illinois Human Rights Act and Defendant's Policy on Harassment to provide a workplace where racial discrimination was not tolerated or condoned.  The Defendant breached that duty when the Defendant negligently disregarded the probability that the conduct would cause the Plaintiff to suffer emotional distress.  The Plaintiff endured severe or extreme emotional distress and the Defendant's conduct actually and proximately caused Plaintiff's distress.

14.     As a result of Defendant's negligent infliction of emotional distress, Plaintiff has suffered damages including wage loss, emotional distress, pain and suffering, and humiliation.

WHEREFORE, Plaintiff prays the Court award damages in excess of $50,000, attorney's fees, and cost of suit.

## Count V (Intentional Infliction of Emotional Distress v. Christopher Gula)

COMES NOW Plaintiff, Brian Bland, by and through his attorney, John H. Leskera, and for Count V of his Complaint directed against Defendant, Christopher Gula, states to the Court as follows:

1.     USF Holland, Inc. is doing business in Madison County within a facility located at 24 Gateway Commerce Center Drive East, Edwardsville, IL 62025.  At all times Defendant, USF Holland, Inc., was subject to the provisions of the Illinois Human

Rights Act (775 ILCS 5) which prohibits discrimination in employment on the basis of race.

2.     Plaintiff, an African American male, became employed with Defendant on or about October 13, 2005 as a truck driver at Defendant's Edwardsville facility. As such, Plaintiff was entitled to the protections against racial discrimination afforded under the Illinois Human Rights Act (775 ILCS 5).

3.     At all times a term and condition of the Plaintiff's job was set forth in Defendant's "Policy on Harassment" reissued May 25, 2012. Defendant committed itself to "providing a work environment where people are treated with respect" and prohibited harassment on the basis of race.  The Policy further provided that: "Any employee that harasses a coworker will be subject to disciplinary action up to and including discharge."

4.     The Policy defined harassment as "any conduct or language that makes someone feel uncomfortable because of their race."  The Policy provided examples of harassment which included the following:  Use of ethnic slurs, making racial jokes, making offensive or derogatory comments, displaying offensive items such as a hangman's noose, and displaying offensive material.

5.     The Policy promised that if a complaint were made "the Company will promptly and thoroughly investigate" while keeping complaints made "confidential." Finally, the Policy provided that if harassment occurred "appropriate corrective action" will be taken.

6.     During the course of Plaintiff's employment with Defendant, the Defendant ignored its Policy on Harassment and failed to enforce its terms even though the Policy was a term and condition of the Plaintiff's employment.  Offensive racial jokes,

demeaning to African Americans, were told on a regular basis in the presence of supervisors. Racial slurs, including the use of the N-word, were routinely uttered without consequence from management. Racially offensive posters and signs, including KKK insignia, were displayed at the facility and remained posted for a significant period of time. The Defendant's tolerance of this behavior, coupled with its refusal to enforce the Policy on Harassment, created a culture of racism.

7.      On or about April 12, 2017, while Plaintiff was making delivery at Jahabow Industries, Inc. in Owensville, MO, a Jahabow employee climbed onto Plaintiff's truck and facetiously asked, "Do you have the load of watermelons?" When Plaintiff explained he was not delivering watermelons, the employee reported back to a large group of other employees who laughed. Another Jahabow employee offensively asked, "Does he have the bananas?" This abhorrent question produced further laughter from the Jahabow employees. Plaintiff explained he did not have the bananas either. Those questions were asked purely for the purpose of harassing Plaintiff on the basis of his race.

8.      Plaintiff had confidential conversations with Keith Mitchell, Holland's Terminal Dispatcher, and Christopher Gula, Holland's Terminal Manager, regarding the events that occurred at Jahabow Industries, Inc. on April 12, 2017. Plaintiff         had reasonable expectation that the events that occurred at Jahabow Industries, Inc. on April 12, 2017 would be kept confidential.

9.      April 26, 2017, when Plaintiff reported to work, he was traumatized to find a banana hanging on a rope from the handle of a pallet jack with which the Plaintiff was assigned to work. This racist symbol was used to represent a hangman's noose.

Plaintiff's co-workers who worked in the immediate area, who were all white, knew the noose was hung from the pallet jack but did nothing to remove it. In fact, co-worker Jimmy McCutchen asked the Plaintiff as he approached his work area, "Have you seen what is hanging from your pallet jack?" This incident caused Plaintiff to suffer from severe emotional distress and affected his ability to work.

10.     Neither Keith Mitchell nor Christopher Gula kept the incident at Jahabow industries "confidential." The banana hanging from the noose on Plaintiff's pallet jack was a direct result of the Jahabow Industries, Inc.'s incident which was disclosed by Mitchell and Gula. Defendant treated the incident at Jahabow as something humorous to be shared with all employees rather than keeping the matter confidential as set forth in the Policy on Harassment.

11.     Defendant further violated the Policy on Harassment by failing to "thoroughly investigate" the April 26, 2017 incident regarding the noose on the Plaintiff's pallet jack. Defendant would only discipline an employee who admitted to placing the banana on the pallet jack. When no one admitted to the offense, the Defendant issued no discipline. Defendant's investigation was unmotivated, sloppy, and designed to go through the motions rather than to elicit the facts surrounding this racially offensive act. As such, the "investigation" violated the Policy on Harassment and altered the terms and conditions of Plaintiff's employment to work in an employment setting free from racial harassment.

12.     The Defendant's conduct constitutes extreme and outrageous behavior towards the Plaintiff. The Defendant intended or recklessly disregarded the probability that the conduct would cause the Plaintiff to suffer emotional distress. The Plaintiff

endured severe or extreme emotional distress and the Defendant's conduct actually and proximately caused Plaintiff's distress.

13.    Christopher Gula, as Terminal Manager at the Edwardsville facility, failed to implement the Policy on Harassment and allowed the culture of racism to exist. Defendant was therefore complicit in the hanging of the noose on the Plaintiff's pallet jack which resulted in the emotional harm suffered by the Plaintiff.  Christopher Gula knew, or should have known, the noose was placed on the pallet jack and Christopher Gula should have taken appropriate action and removed it prior to Plaintiff reporting for work.

14.    As a result of Defendant's intentional infliction of emotional distress, Plaintiff has suffered damages including wage loss, emotional distress, pain and suffering, and humiliation.

WHEREFORE, Plaintiff prays the Court award damages in excess of $50,000, attorney's fees, and cost of suit.

## Count VI (Negligent Infliction of Emotional Distress v. Christopher Gula)

COMES NOW Plaintiff, Brian Bland, by and through his attorney, John H. Leskera, and for Count III of his Complaint directed against Defendant, Christopher Gula, states to the Court as follows:

1.    USF Holland, Inc. is doing business in Madison County within a facility located at 24 Gateway Commerce Center Drive East, Edwardsville, IL 62025. At all times Defendant, USF Holland, Inc., was subject to the provisions of the Illinois Human

Rights Act (775 ILCS 5) which prohibits discrimination in employment on the basis of race.

2.     Plaintiff, an African American male, became employed with Defendant on or about October 13, 2005 as a truck driver at Defendant's Edwardsville facility. As such, Plaintiff was entitled to the protections against racial discrimination afforded under the Illinois Human Rights Act (775 ILCS 5).

3.     At all times a term and condition of the Plaintiff's job was set forth in Defendant's "Policy on Harassment" reissued May 25, 2012. Defendant committed itself to "providing a work environment where people are treated with respect" and prohibited harassment on the basis of race.  The Policy further provided that: "Any employee that harasses a coworker will be subject to disciplinary action up to and including discharge."

4.     The Policy defined harassment as "any conduct or language that makes someone feel uncomfortable because of their race."  The Policy provided examples of harassment which included the following:  Use of ethnic slurs, making racial jokes, making offensive or derogatory comments, displaying offensive items such as a hangman's noose, and displaying offensive material.

5.     The Policy promised that if a complaint were made "the Company will promptly and thoroughly investigate" while keeping complaints made "confidential." Finally, the Policy provided that if harassment occurred "appropriate corrective action" will be taken.

6.     During the course of Plaintiff's employment with Defendant, the Defendant ignored its Policy on Harassment and failed to enforce its terms even though the Policy was a term and condition of the Plaintiff's employment.  Offensive racial jokes,

demeaning to African Americans, were told on a regular basis in the presence of supervisors. Racial slurs, including the use of the N-word, were routinely uttered without consequence from management. Racially offensive posters and signs, including KKK insignia, were displayed at the facility and remained posted for a significant period of time. The Defendant's tolerance of this behavior, coupled with its refusal to enforce the Policy on Harassment, created a culture of racism.

7. On or about April 12, 2017, while Plaintiff was making delivery at Jahabow Industries, Inc. in Owensville, MO, a Jahabow employee climbed onto Plaintiff's truck and facetiously asked, "Do you have the load of watermelons?" When Plaintiff explained he was not delivering watermelons, the employee reported back to a large group of other employees who laughed. Another Jahabow employee offensively asked, "Does he have the bananas?" This abhorrent question produced further laughter from the Jahabow employees. Plaintiff explained he did not have the bananas either. Those questions were asked purely for the purpose of harassing Plaintiff on the basis of his race.

8. Plaintiff had confidential conversations with Keith Mitchell, Holland's Terminal Dispatcher, and Christopher Gula, Holland's Terminal Manager, regarding the events that occurred at Jahabow Industries, Inc. on April 12, 2017. Plaintiff        had reasonable expectation that the events that occurred at Jahabow Industries, Inc. on April 12, 2017 would be kept confidential.

9. April 26, 2017, when Plaintiff reported to work, he was traumatized to find a banana hanging on a rope from the handle of a pallet jack with which the Plaintiff was assigned to work. This racist symbol was used to represent a hangman's noose.

Plaintiff's co-workers who worked in the immediate area, who were all white, knew the noose was hung from the pallet jack but did nothing to remove it. In fact, co-worker Jimmy McCutchen asked the Plaintiff as he approached his work area, "Have you seen what is hanging from your pallet jack?" This incident caused Plaintiff to suffer from severe emotional distress and affected his ability to work.

10.    Neither Keith Mitchell nor Christopher Gula kept the incident at Jahabow industries "confidential." The banana hanging from the noose on Plaintiff's pallet jack was a direct result of the Jahabow Industries, Inc.'s incident which was disclosed by Mitchell and Gula. Defendant treated the incident at Jahabow as something humorous to be shared with all employees rather than keeping the matter confidential as set forth in the Policy on Harassment.

11.    Defendant further violated the Policy on Harassment by failing to "thoroughly investigate" the April 26, 2017 incident regarding the noose on the Plaintiff's pallet jack. Defendant would only discipline an employee who admitted to placing the banana on the pallet jack. When no one admitted to the offense, the Defendant issued no discipline. Defendant's investigation was unmotivated, sloppy, and designed to go through the motions rather than to elicit the facts surrounding this racially offensive act. As such, the "investigation" violated the Policy on Harassment and altered the terms and conditions of Plaintiff's employment to work in an employment setting free from racial harassment.

12.    The Defendant's conduct constitutes extreme and outrageous behavior towards the Plaintiff. The Defendant intended or recklessly disregarded the probability that the conduct would cause the Plaintiff to suffer emotional distress. The Plaintiff

endured severe or extreme emotional distress and the Defendant's conduct actually and proximately caused Plaintiff's distress.

13.    Christopher Gula, as Terminal Manager at the Edwardsville facility, failed to implement the Policy on Harassment and allowed the culture of racism to exist. Defendant was therefore complicit in the hanging of the noose on the Plaintiff's pallet jack which resulted in the emotional harm suffered by the Plaintiff.  Christopher Gula knew, or should have known, the noose was placed on the pallet jack and Christopher Gula should have taken appropriate action and removed it prior to Plaintiff reporting for work.

14.    The Defendant owed a duty to the Plaintiff based on the Illinois Human Rights Act and Defendant's Policy on Harassment to provide a workplace where racial discrimination was not tolerated or condoned.  The Defendant breached that duty when the Defendant negligently disregarded the probability that the conduct would cause the Plaintiff to suffer emotional distress.  The Plaintiff endured severe or extreme emotional distress and the Defendant's conduct actually and proximately caused Plaintiff's distress.

15.    As a result of Defendant's negligent infliction of emotional distress, Plaintiff has suffered damages including wage loss, emotional distress, pain and suffering, and humiliation.

WHEREFORE, Plaintiff prays the Court award damages in excess of $50,000, attorney's fees, and cost of suit.

John H. Leskera #6200078
Leskera Law Firm
120 E. Church Street
Collinsville, IL 62234
(618) 344-3281

June 7, 2018

IN THE CIRCUIT COURT
FOR THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

CASE NUMBER: 2018 L 000746

BRIAN BLAND

Plaintiff(s)

VS.

USF HOLLAND INC

Defendant(s)



FILED
JUN 7 - 2018
CLERK OF CIRCUIT COURT #9
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

ASSIGNMENT ORDER

The above case is hereby assigned to the Honorable  DENNIS RUTH for setting and disposition.

Clerk to send copies of this Order to the attorneys of record and any pro se party.

DATE: June 07, 2018

s/David Hylla
Chief Judge

***EFILED***
Transaction ID: 62113146
Date: Jun 07 2018 01:47PM
Mark Von Nida
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

## IN THE CIRCUIT COURT
## THIRD JUDICIAL CIRCUIT
## MADISON COUNTY, ILLINOIS

BRIAN BLAND,                          )
                                      )
     Plaintiff,                      )
                                      )
v.                                    )   Case No.:  18-L-
                                      )
USF HOLLAND, INC., and                )
CHRISTOPHER GULA,                     )
                                      )
     Defendant.                      )

### ENTRY OF APPEARANCE

COMES NOW John H. Leskera and Leskera Law Firm and enter their appearance on

behalf of Plaintiff, Brian Bland.

**LESKERA LAW FIRM**

John H. Leskera                    #6200078
120 East Church Street
Collinsville, IL  62234
T:      618.344.3281
E:      Jay@leskeralaw.net

\*\*\*EFILED\*\*\*
Transaction ID: 62113146
Date: Jun 07 2018 01:47PM
Mark Von Nida
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

BRIAN BLAND,                              )
                                         )
     Plaintiff,                         )
                                         )
v.                                       )    Case No.: 18-L-
                                         )
USF HOLLAND, INC. and                    )
CHRISTOPHER GULA,                        )
                                         )
     Defendant.                         )

## AFFIDAVIT OF DAMAGES

Plaintiff seeks damages in excess of $50,000.

**LESKERA LAW FIRM**

_____

John H. Leskera                    #6200078
120 East Church Street
Collinsville, IL 62234
T:    618.344.3281
E:    Jay@leskeralaw.net

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
155 N Main St., Edwardsville, IL 62025
(618) 296-4464
madisoncountycircuitclerkIL.org



005970

CASE No. 2018 L 000746

DATE: June 07, 2018

CLERK OF CIRCUIT COURT # 82
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

BRIAN BLAND

PLAINTIFF

VS.

CHRISTOPHER GULA
24 GATEWAY COMMERCE CENTER D
EAST
EDWARDSVILLE, IL 62025

DEFENDANT

I CERTIFY THAT AFTER DILIGENT INQUIRY
THE PERSON TO BE SERVED WITH THIS
DOCUMENT, AS NAMED HEREIN, CANNOT BE
FOUND WITHIN MADISON COUNTY, ILLINOIS.

JOHN D. /    . SHERIFF

BY

DATED

DEFENDANT: CHRISTOPHER GULA

You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

MARK VON NIDA the Clerk of said Circuit Court and the seal thereof, at Edwardsville, Illinois, this June 7, 2018.
MARK VON NIDA
CLERK OF THE CIRCUIT COURT

BY:
Deputy Clerk

(Plaintiff's attorney or plaintiff if he is not represented by an attorney)
JOHN H. LESKERA
LESKERA LAW FIRM
120 E CHURCH ST
COLLINSVILLE, IL 62234

Date of Service:_____, 20_____.
(To be inserted by officer on the copy left with the defendant or other person)

1 of 2

The Madison County Court makes every effort to comply with accessibility laws and provides reasonable accommodations to persons with disabilities. Hearing, visual and other assistance may be arranged by contacting our Court Disability Coordinator, Teri Picchioldi at 618-296-4884.

***EFILED***
Case Number 2018L 000746
Date: 7/17/2018 12:53 PM
Mark Von Nida
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
155 N Main St., Edwardsville, IL  62025
(618) 296-4464
madisoncountycircuitclerkIL.org

CASE No.  2018 L  000746

DATE:  June 07, 2018

BRIAN BLAND

                    PLAINTIFF

VS.

USF HOLLAND INC
24 GATEWAY COMMERCE CENTER DR
EAST
EDWARDSVILLE, IL

                    DEFENDANT

I certify that this document has been
served in accordance with Illinois
State Statutes governing service of
process. Particulars of the specific
service are contained in the records of
the Sheriff's Headquarters, 405 Randle
St., Edwardsville, IL 62025

JOHN D. LAKIN, Sheriff

By _____
Date of service: 6-19-18

D. Andrew Collins

DEFENDANT:  USF HOLLAND INC

You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service.  If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date.

Witness: MARK VON NIDA the Clerk of said Circuit Court and the seal thereof, at Edwardsville, Illinois, this June 7, 2018 .

MARK VON NIDA
CLERK OF THE CIRCUIT COURT

(SEAL)

BY: _____
         Deputy Clerk

(Plaintiff's attorney or plaintiff if he is not represented by an attorney)
JOHN H. LESKERA
LESKERA LAW FIRM
120 E CHURCH ST
COLLINSVILLE, IL 62234

Date of Service:_____, 20_____.
(To be inserted by officer on the copy left with the defendant or other person)

1 of 2

**The Madison County Court makes every effort to comply with accessibility laws and provides reasonable accommodations to persons with disabilities.  Hearing, visual and other assistance may be arranged by contacting our Court Disability Coordinator, Teri Picchioldi at 618-296-4884.**

CASE No. 2018 L  000746

STATE OF ILLINOIS }
MADISON COUNTY   } ss.

I, _____, Sheriff of said county, have duly served the within summons on the defendant
_____ by leaving a copy thereof with said defendant personally, on the _____ day of
_____, 20____.

I have duly served the said summons on the defendant, _____
on the _____ day of _____, 20_____, by leaving a copy of
said summons on said date at his/her usual place of abode with _____, a person of the
family of said _____ of the age of 13 years or upwards and by informing such persons with whom
said summons was left of the contents thereof and by also sending a copy of said summons on the _____ day of _____,
20_____, in a sealed envelope, with postage fully prepaid, addressed to said defendant
_____, at his/her usual place of abode, as stated hereinabove in my return.


Dated this _____ day of _____, 20_____.


_____                                    _____
                                                                                                    Sheriff

Sheriff's Fees

Service...............$_____

Making Copies..........$_____

Miles Traveled..$_____

Cost of mailing copies  $_____

Return……………….$_____

Total……………….$_____

BRIAN BLAND

PLAINTIFF

VS.

USF HOLLAND INC
24 GATEWAY COMMERCE CENTER DR
EAST
EDWARDSVILLE, IL

DEFENDANT

2 of 2