IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRIAN BLAND,                       )
                                   )
              Plaintiff,         )
                                   )
vs.                                )    Case No. 18-cv-1416-MJR-DGW
                                   )
USF HOLLAND, INC.,                 )
and CHRISTOPHER GULA,              )
                                   )
              Defendants.        )

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

**A.**　**Introduction**

    USF Holland LLC (Holland) is a freight hauler that operates a facility in Edwardsville, Illinois, within this Judicial District. Brian Bland, an African-American man, worked as a truck driver for Holland starting in October 2005. In June 2018, Bland filed suit in Illinois state court against Holland and an individual named Christopher Gula, the Terminal Manager at the Edwardsville location. The complaint alleged that Holland had violated the Illinois Human Rights Act, 775 ILCS 5, et seq., by fostering a hostile work environment and discriminating on the basis of race, and that both Defendants had negligently and intentionally inflicted emotional distress on Bland, for instance by failing to enforce a company anti-harassment policy, failing to take corrective action after reports of harassing behavior, and failing to keep confidential a report of racial harassment - instead widely sharing it with employees as a funny story.

Holland removed the action to this United States District Court on July 19, 2018, invoking subject matter jurisdiction under the federal diversity statute, 28 U.S.C. 1332. Section 1332 confers on federal district courts original jurisdiction over suits in which the amount in controversy exceeds $75,000 (exclusive of interest and costs), and the action is between citizens of different states. The amount in controversy passes muster here. The question, on which the undersigned solicited jurisdictional briefing, is whether the parties are completely diverse. Plaintiff Bland is an Illinois citizen. Defendant Holland (a limited liability company) is a citizen of Delaware, Michigan, and Kansas.[1] Defendant Gula is an Illinois citizen, like Bland. Holland maintains that Gula was fraudulently joined, so his citizenship poses no impediment to jurisdiction. The parties have briefed their positions. For the reasons explained below, the Court finds that Christopher Gula was not fraudulently joined, and diversity is not complete.

**B.** <u>Analysis</u>

To demonstrate fraudulent joinder, a removing defendant must hurdle a high bar. In *Schwartz v. State Farm Mutual Auto Ins. Co.*, **174 F.3d 875, 878 (7th Cir. 1999)**, the United States Court of Appeals for the Seventh Circuit explained that although a plaintiff is normally free to choose his own forum, he may not join an in-state defendant *solely* to defeat diversity jurisdiction. "Such joinder is considered fraudulent, and is therefore disregarded, if the out-of-state defendant can show there exists no 'reasonable

---

[1] Limited liability companies take the citizenship of each and every one of their members. *See Copeland v. Penske Logistics LLC*, **675 F.3d 1040, 1043 (7th Cir. 2012);** *Cosgrove v. Bartolotta*, **150 F.3d 729, 731 (7th Cir. 1998);** *Americold Realty Trust v. Conagra Foods, Inc.*, **-- U.S. --, 136 S. Ct. 1012, 1015 (2016).**

possibility that a state court would rule against the [in-state] defendant.'" *Id., quoting Poulos v. Naas Foods, Inc.*, **959 F.2d 69, 73 (7th Cir. 1992).**

The Seventh Circuit reiterated this principle in *Morris v. Nuzzo*, **718 F.3d 660, 666 (7th Cir. 2013):**

> Under the fraudulent joinder doctrine …, an out-of-state defendant's right of removal premised on diversity cannot be defeated by joinder of a nondiverse defendant against whom the plaintiff's claim has "no chance of success." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992); *see also Walton v. Bayer Corp.*, 643 F.3d 994 (7th Cir. 2011); *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752 (7th Cir. 2009); *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875 (7th Cir. 1999); *Gottlieb v. Westin Hotel Company*, 990 F.2d 323 (7th Cir. 1993). The doctrine is designed to "strike a reasonable balance among the policies to permit plaintiffs the tactical prerogatives to select the forum and the defendants they wish to sue, but not to reward abusive pleading by plaintiffs, and to protect the defendants' statutory right to remove."[2]

To demonstrate that Gula was fraudulently joined here, Holland must show that, after all issues of fact and law are resolved in favor of Bland, Bland cannot establish any cause of action against Gula. *Morris*, **718 F.3d at 666**, *citing Poulos*, **959 F.2d at 73.** *Accord Thornton v. M7 Aerospace LP*, **796 F.3d 757, 765 (7th Cir. 2015).** If Holland meets this "heavy burden," the undersigned disregards the citizenship of Gula, dismisses Gula, and retains jurisdiction of the case. *Morris*, **718 F.3d at 666.**

---

[2] A defendant removing a case on diversity grounds must demonstrate that the case satisfies the requirements of § 1332(a) and that it does not run afoul of 28 U.S.C. 1441(b)(2), the "forum defendant rule." ***Hurley v. Motor Coach Industries, Inc.*, 222 F.3d 377, 378 (7th Cir. 2000).** That rule (nonjurisdictional in nature and not raised by the parties here) provides that a civil action otherwise removable solely on the basis of diversity may not be removed if any party "properly joined and served" as a defendant is a citizen of the state in which the action is brought. *Morris*, **718 F.3d at 665.** Gula was not served as of the date the case was removed to this Court.

The issue is whether Bland can establish *any* cause of action against Defendant Gula. This question was framed in the Court's July 24, 2018 Order (Doc. 8, p. 6) as: "whether there is any reasonable possibility that an Illinois court would rule against Gula on Counts V and VI" of Bland's complaint – one of which alleged intentional infliction of emotional distress and the other of which alleged negligent infliction of emotional distress. In his jurisdictional memorandum (Doc. 13, p. 4), Bland says he is voluntarily dismissing Count IV (against Holland) and Count VI (against Gula), so the properly re-framed question is whether there is a reasonable possibility that an Illinois state court would rule in favor of Bland and against Gula on Count V, the claim for intentional infliction of emotional distress.[3]

One year ago, the Seventh Circuit summarized what is needed to successfully assert a claim for intentional infliction of emotional distress in Illinois.

> Under Illinois law, a plaintiff may recover damages for intentional infliction of emotional distress only if she establishes that (1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress. *Feltmeier v. Feltmeier*, … 798 N.E.2d 75, 80 (2003).
>
> In defining the first element, the Illinois Supreme Court has held that "to qualify as outrageous, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded

---

[3] In this Circuit, a plaintiff may not voluntarily dismiss one claim via Federal Rule of Civil Procedure 41(a). Rule 41 voluntary dismissals are limited to dismissals of entire actions (i.e., cases) and may not be used to cleave away one or two claims and leave others. A plaintiff may dismiss less than an entire action by filing an amended complaint. ***See Taylor v. Brown*, 787 F.3d 851, 857 (7th Cir. 2015).** For purposes of conducting the fraudulent joinder analysis here, the Court construes Plaintiff's statement as *conceding* that he only has a viable claim of intentional infliction of emotional distress against Defendant Gula.

> as intolerable in a civilized society." *Feltmeier*, … 798 N.E.2d at 83. To avoid imposing liability for the rough and tumble of unpleasant—but not law-breaking—behavior, the case law instructs that "'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' do not amount to extreme and outrageous conduct, nor does conduct 'characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997)…. And to avoid imposing liability for idiosyncratic and individualized reactions, "[w]hether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of a particular case." *Franciski v. Univ. of Chi. Hosps.*, 338 F.3d 765, 769 (7th Cir. 2003).

*Richards v. U.S. Steel*, **869 F.3d 557, 566–67 (7th Cir. 2017).**

The Court in *Richards* further explained that liability for emotional distress, as a common-law tort, "is even more constrained in the employment context." Illinois courts limit recovery to those cases in which "the employer's conduct has been truly egregious." *Richards,* **869 F.3d at 567,** *citing Van Stan,* **125 F.3d at 568.** This stems from the fact that distress is a natural byproduct of necessary actions by employers taken in the normal course of business. There is a hesitation "to find intentional infliction of emotional distress in the workplace because, if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action." *Richards,* **869 F.3d at 567,** *quoting Naeem v. McKesson Drug Co.,* **444 F.3d 593, 606 (7th Cir. 2006).**

Under Illinois law, conduct in the employer-employee context is not extreme and outrageous unless the "employer clearly abuses the power it holds over an employee in a manner far more severe that the typical disagreements or job-related stress caused by

the average work environment." *Lewis v. School Dist. No. 70*, **523 F.3d 730, 747 (7th Cir. 2008),** *quoting Naeem*, **444 F.3d at 605.**

Returning to the elements of an intentional infliction of emotional distress (IIED) claim under Illinois law, Bland must show that (1) Gula's "conduct was truly extreme and outrageous," (2) Gula intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would cause severe emotional distress to Bland, and (3) Gula's conduct did in fact cause severe emotional distress. The Court examines these elements in reverse order.

Bland has satisfied the third element, i.e., he suffered severe emotional distress. Resolving all factual and legal issues in Bland's favor, the Court also finds the second element met. Gula may not have intended to inflict severe emotional distress on Bland. But Bland's allegations support (and an Illinois court reasonably could find) that Gula knew there was a high probability that his acts and omissions – liberally divulging confidential information to other employees, failing to robustly investigate the incidents, and essentially letting horrendous race-based harassing behavior go without consequence – would result in severe emotional distress to Bland.

The first element presents a closer call – whether Bland has alleged conduct by Gula sufficiently extreme in degree or outrageous in character to support an IIED claim under Illinois law. The complaint alleges dreadful incidents with racial connotations. It is true that the harassing actions were not done by Gula himself. But to objectively judge Gula's acts or omissions, the Court must view the totality of the circumstances in which Bland was harassed.

The complaint describes a workplace where racial jokes and racial slurs – including the use of the "N word" – were "routinely uttered without consequence" and racially offensive signs – including posters with the KKK insignia -- were displayed and allowed to remain, all with Holland tolerating the reprehensible behavior, ignoring its own anti-harassment policy, and failing to take appropriate corrective action.

The count directed against Gula, Count V, references two incidents of racial harassment. On April 12, 2017, an employee of another company (Jahabow Industries) asked Bland (who had arrived in his truck at the other company's Missouri facility) if Bland had "the load of watermelons." When Bland said no, a second Jahabow employee asked if Bland had "bananas," after which other employees laughed. Bland reported this to Gula and expected that, in keeping with company policy, the report would be kept confidential and would receive follow-up of some kind. Neither of those occurred.

On April 26, 2017, Bland arrived at work at Holland and found a banana hanging by rope or make-shift noose from the handle of a pallet jack. The first incident (albeit by Holland employees) plainly involves racially harassing behavior. The second incident (at Holland by Holland employees) involves an obviously racist symbol, directed by white co-workers at African-American Bland. Some of Bland's co-workers saw the noose at Bland's work station before he arrived and left it hanging, taking no action to minimize the harassment and, in effect, joining or endorsing the racially demeaning, harassing, and terrorizing behavior.

Gula is alleged to have failed to keep the April 12th incident confidential after Bland reported it, when he knew the details would be extremely embarrassing to Bland. He is also alleged to have abdicated his duty to investigate the April 26th incident, failed to properly enforce the company's anti-harassment policy, and utterly failed to impose or implement discipline for the April 26th incident (*see* Doc. 13, p. 7). Considering these actions and inactions by Gula together, and resolving all issues of law and fact in Bland's favor, the undersigned cannot find there is zero reasonable possibility that a state court would find that Bland had a cause of action against Gula, the in-state defendant. *See Poulos,* **959 F.2d at 73.**

In his jurisdictional briefing, Bland suggests that he had a special condition which made him more susceptible to emotional distress (*see* Doc. 13 at 6 and 9). That was not alleged in the complaint, so the Court does not rely on that argument in reaching its conclusion here but only briefly addresses this point.

Illinois courts often look to a plaintiff's special susceptibility to emotional distress as one factor in deciding whether conduct is objectively extreme and outrageous enough to constitute IIED. *See Cariel v. Alderden,* **821 F.3d 823, 835-36 (7th Cir. 2016) (Illinois courts consider the degree of power the defendant holds over the plaintiff, whether the defendant reasonably believed his objective in taking certain action was legitimate, and whether the defendant knew the plaintiff was particularly susceptible to emotional distress and acted inappropriately despite that knowledge).**

The Seventh Circuit has explained:

> An additional consideration in determining whether extreme and outrageous behavior exists is whether the plaintiff is particularly susceptible to emotional distress because of some physical or mental condition or peculiarity; behavior that otherwise might be considered merely rude, abrasive or inconsiderate may be deemed outrageous if the defendant knows that the plaintiff is particularly susceptible to emotional turmoil. *See McGrath,* … 533 N.E.2d at 811–12 (defendants knew plaintiff was suffering from heart disease); *Pavilon v. Kaferly*, …561 N.E.2d 1245, 1252 (1990) (defendant knew plaintiff was undergoing psychotherapy); *Wall v. Pecaro,* … 561 N.E.2d 1084, 1088 (1990) (defendant knew plaintiff was pregnant).

*Honaker v. Smith***, 256 F.3d 477, 492 (7th Cir. 2001).**

Bland asserts that Plaintiff was particularly susceptible to severe emotional distress because (a) the St. Louis metropolitan area had been in the news after a Ferguson police officer fatally shot a black teenager (Michael Brown), launching the "Black Lives Matter" movement into the national spotlight, and (b) during the 2016 NFL season, football players protested during the national anthem, provoking uneasy debate among American citizens. Without question, these events polarized people and heightened racial tensions throughout the country. Plaintiff's counsel does not explain how they made Brian Bland any more "susceptible" to emotional distress than hundreds of other black citizens within the community. Unlike the examples mentioned in *Honaker* (e.g., when the defendant knew the plaintiff was pregnant or suffering from heart disease), the existence of widespread racial tension may not be a particularized susceptibility of Brian Bland, but it may be relevant to the assessment of the effect the conduct of Bland's manager (Gula) had on Bland.

In the Spring and Summer of 2017, this community was immersed in a climate of simmering racial hostility. Gula allegedly breached Bland's trust by sharing the information Bland confidentially reported (as called for in the anti-harassment policy) and treating the incidents as humorous anecdotes to be freely shared with "all employees" (Doc. 1-1, pp. 5-6). Bland alleges that Gula's actions and his *refusal* to enforce the anti-harassment policy adversely affected Bland's ability to work. One can readily envision how this made it worse for Bland in the workplace, now viewed as thin-skinned, a tattle-tale, someone trying to get co-workers in trouble, and a "fair game" target for reprehensible racially-motivated harassment. Furthermore, Gula allegedly *refused* to conduct an investigation culminating in *any discipline to any employee*, much less the appropriate discipline promised in the company's anti-harassment policy – "up to and including discharge" (Doc. 1-1, p. 4).

Personality conflicts, disagreements, and hurt feelings in the workplace are quotidian and unavoidable. Employee distress naturally results from the justifiable work-related actions of managers and supervisors, such as criticizing an employee or questioning his job performance. These things do not rise to the level of intentional inflection of emotional distress under Illinois law – they are routine, everyday job stresses. Gula's conduct stands in stark contrast. He could not reasonably believe his actions and inactions furthered legitimate employment-related ends.

Treating a confidential report of racially harassing behavior as a funny story to spread is beyond negligent or inexcusable, it is outrageous. Taking no action to discipline employees who constructed a hangman's noose around a banana and

prominently displayed it dangling from a rope on a pallet jack at Bland's workstation oversteps all bounds of decency.

Gula's alleged conduct is sufficiently extreme and outrageous to support an Illinois IIED cause of action. Gula knew there was a high probability his actions and inactions would cause Bland severe emotional distress, and they did. Because there is a reasonable possibility that Plaintiff Bland could prevail against Defendant Gula in Illinois court on Count V, the undersigned finds that Gula was fraudulently joined. His citizenship counts, and it destroys complete diversity between the parties. Federal subject matter jurisdiction – invoked solely under the diversity statute, 28 U.S.C. 1332 – is not secure.

**C.** **Conclusion**

Plaintiff Bland and Defendant Gula are both citizens of Illinois. Diversity is not complete, as required to exercise jurisdiction under 28 U.S.C. 1332. Because the Court lacks subject matter jurisdiction, this case is **REMANDED** to the Circuit Court of Madison County, Illinois.

IT IS SO ORDERED.

DATED: September 20, 2018

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Judge